# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SCOTT BUTLER | § | |
| | § | |
| v. | § | CASE NO. 4:13-CV-199 |
| | § | Judge Mazzant |
| AMERICAN HERITAGE LIFE | § | |
| INSURANCE COMPANY, A subsidiary of | § | |
| THE ALLSTATE CORPORATION, and | § | |
| ALLSTATE INSURANCE COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Scott Butler's Motion to Compel (Dkt. #62). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

The above-referenced case consists of a breach of contract claim, a wrongful termination claim, and a fraud claim. Plaintiff Scott Butler ("Plaintiff" or "Butler") was an employee of Allstate Insurance Company, where he served as a Field Vice President in the Benefits department (Dkt. #40 at ¶ 6). In 2008, his direct supervisor became Wayne Watkins ("Watkins") (Dkt. #40 at ¶ 8). Plaintiff believed that Watkins was violating the ethical rules of Allstate, when he learned that Watkins was carrying on an illicit relationship with a married woman who also had an insurance benefits business in New Orleans. (Dkt. #40 at ¶ 14, 16).

Plaintiff discussed Watkins' alleged ethical violation with David Mueller ("Mueller"), who worked in Allstate's Corporate Security Office (Dkt. #40 at ¶ 17). Mueller was directed by Susan Rosborough ("Rosborough"), an in-house attorney for Allstate, to conduct an investigation into Watkins' alleged inappropriate conduct (Dkt. #102 at pp. 1-2). On or about September 2012, Plaintiff was terminated when Human Resources informed him that his production had not met the goals that Watkins had set for him.

On August 13, 2015, Plaintiff filed his motion for compel (Dkt. #62; Dkt. #63). On August 28, 2015, Defendants filed their response (Dkt. #66). On September 2, 2015, the Court held a hearing regarding Plaintiff's Motion to Compel. Also on September 2, 2015, the Court entered an order regarding Plaintiff's Motion to Compel, in which the Court found as follows:

> (1) Defendants must submit all documents regarding the Mueller investigation that they claim are privileged for an *in camera* inspection by no later than September 9, 2015, at 5:00 p.m.; (2) Defendants must produce to Plaintiff an un-redacted Settlement Agreement relating to the Steve Yang settlement by no later than September 9, 2015, at 5:00 p.m….; (3) Defendant must provide all other documents to Plaintiff by no later than September 16, 2015, at 5:00 p.m.

(Dkt. #71 at p. 1). On December 3, 2015, the Court entered an order requiring additional briefing from the parties discussing whether David Mueller was acting in an investigative capacity or in a legal capacity when he conducted his investigations for Allstate (Dkt. #98 at p. 1). On December 9, 2015, Plaintiff filed his Supplemental Brief Regarding its Motion to Compel Production of Mueller Investigation Documents (Dkt. #100; Dkt. #101). On December 11, 2015, Defendants filed their response (Dkt. #102). On December 14, 2015, Plaintiff filed his reply (Dkt. #103).

## LEGAL STANDARD

In the present case, Defendants have withheld documents claiming that both attorney-client privilege and the work-product doctrine bars production. The attorney-client privilege is "the oldest and most venerated of the common law privileges of confidential communications [and] serves [an] important interest in our judicial system." *U.S. v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. 383, 389 (1981).

The parties agree that Texas law governs the resolution of the privilege issue in this diversity case. *See* FED. R .EVID. 501; *Seibu Corp. v. KPMG LLP*, No. 3-00-CV-1639-X, 2002 WL 87461, at *1 (N.D. Tex. Jan. 18, 2002). Under Texas law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. TEX. R. EVID. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 925 n.4 (Tex. 1996).

The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies each element. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004); *see Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 n.7 (5th Cir. 1985). General allegations of privilege are insufficient to meet this burden. *Navigant*, 220 F.R.D. at 473; *see Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Servs., Inc.*, 120 F.R.D. 504, 510 (W.D. La. 1988); *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996). Instead, "a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection." *Navigant*, 220 F.R.D. at 473 (quoting *Caruso v. Coleman Co.*, 1995 WL 384602, at *1 (E.D. Pa. Jun. 22, 1995)). "The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.* "Although a privilege log and an *in camera* review may assist the court in conducting its analysis, a party asserting the privilege still much provide 'a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.'" *Id.* at 473-474 (quoting *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1212 (S.D. Ind. 1994); *see also Greene, Tweed of Del., Inc. v.*

*DePont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 699 (D. Nev. 1994)).

"Work product is not a substantive privilege within the meaning of Federal Rule of Evidence 501." *Navigant*, 220 F.R.D. at 476 (citing *Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969, at *4 (N.D. Tex. Sept. 22, 1998)); *see also Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Co.*, 123 F.R.D. 198, 201 (M.D.N.C. 1998) (work product doctrine is merely a qualified immunity from discovery "not having an intrinsic value outside the litigation arena."). "The work product doctrine insulates a lawyer's research, analysis, legal theories, mental impressions, notes and memoranda of witness' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 510 (N.D. Miss. 1988) (citing *Upjohn*, 449 U.S. at 400; *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *reh'g denied*, 688 F.2d 840 (5th Cir. 1982), *cert. denied*, 466 U.S. 944). Therefore, the resolution of the whether documents fall within the work product doctrine is governed by federal law. *Navigant*, 220 F.R.D. at 476 (citing *Interphase*, 1998 WL 664969, at *4; *Varuzza by Zarrillo v. Bulk Materials, Inc.*, 169 F.R.D. 254, 257 (N.D.N.Y. 1996); *In re Combustion, Inc.*, 161 F.R.D. 51, 52 (W.D. La. 1995)).

Federal Rule of Civil Procedure 26(b)(3) provides that only documents prepared "in anticipation of litigation" are exempt from discovery. *Navigant*, 220 F.R.D. at 476; *see Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 WL 21653414, at *2 (E.D. Tex. July 9, 2003). Rule 26(b)(3) provides as follows:

> a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representation…But…those materials may be discovered if (i) they are discovered under Rule 26(b)(1); and (ii) the party shows that it has a substantial need for the

materials to prepare for its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3).  Therefore, the work product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Elec. Data Sys. Corp.*, 2003 WL 21653414, at \*4 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947); *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003)).  It protects two types of materials:  ordinary work product and opinion work product. *Id*; *see generally Upjohn*, 449 U.S. at 400-02.

However, the work product doctrine is not "an umbrella that shades all materials prepared by a lawyer, or agent of the client[,]" and the doctrine excludes materials assembled in the ordinary course of business.  *Elec. Data Sys. Corp.*, 2003 WL 21653414, at \*4 (citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), *cert. denied,* 466 U.S. 944 (1984)).  It also does not extend to the underlying facts relevant to the litigation.  *Id.*; *see generally Upjohn*, 449 U.S. at 395-96.

Therefore, "[t]he threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial." *Elec. Data Sys. Corp.*, 2003 WL 21653414, at \*4; *see Upjohn*, 449 U.S. at 400.  The Fifth Circuit has described the standard for determining whether a document has been prepared in anticipation of litigation as follows:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine.  We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the *primary motivating purpose* behind the creation of the document was to aid in the possible future litigation.

*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir Unit A 1981) (citation omitted) (emphasis added).  "Among the factors relevant to determining the primary motivation for creating a document are 'the retention of counsel and his involvement in the generation of the document

and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Navigant*, 220 F.R.D. at 477 (quoting *Elec. Data Sys. Corp.*, 2003 WL 21653414, at *5 (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)). If the document would have been created without regard to whether litigation was expected, it was made in the ordinary course of business and it not protected by the work product doctrine. *Id.*

## ANALYSIS

*Attorney-Client Privilege*

Defendants assert that the documents submitted to the Court in its *in camera* review consist of "internal email correspondences between Allstate's in-house counsel, or between Allstate's in-house counsel and Allstate's executives." (Dkt. #102 at p. 3). Plaintiff alleges that there is "no indication…that Mr. Mueller was giving legal advice, only that he was conducting a fact finding investigation from which employment decisions regarding Watkins might be made." (Dkt. #103 at p. 3).[1]

Allstate alleges that the "only documents withheld by Allstate are (1) communications between and among attorneys for Allstate, and (2) communications between attorneys for Allstate and executives from Allstate, both categories of which were made for the purpose of those attorneys providing legal advice to Allstate." (Dkt. #66 at pp. 6-7). Allstate asserts that "Mueller was engaged by Allstate's in-house attorney, Sue Rosborough, to conduct an investigation for the purpose of enabling Allstate's Legal Department to render legal advice to

---

[1] In his supplemental brief, Plaintiff asserts that "it appears that Mr. Mueller's purpose was not to conduct a good faith investigation into anything Butler complained about." (Dkt. #100 at p. 3). Therefore, Plaintiff asserts that Mueller's investigation was nothing more than a sham (Dkt. #100 at pp. 5-6). The Court finds that Plaintiff makes a substantive argument regarding the type of investigation launched by Allstate. Therefore, the Court will not consider whether or not the investigation was a sham in making its determination of whether attorney-client privilege or the work product doctrine attach to the documents at issue.

Allstate regarding Butler's complaint." (Dkt. #66 at p. 7). "The entire investigation was to be conducted at the direction of Rosborough, or at the direction of another member of the Corporate Legal team[.]" (Dkt. #102 at p. 2). Allstate alleges that Mueller was requested to assist with an investigation into a complaint made against Watkins and "Rosborough was required to provide legal advice to Allstate regarding what to do about the complaint and Watkins' continued employment with Allstate." (Dkt. #102 at p. 5). Allstate "expected that if any disciplinary or termination action was taken against Watkins, he would likely file suit against Allstate." (Dkt. #102 at p. 5).

As a part of his engagement, Mueller communicated with Allstate's in-house counsel and other employees of Allstate. Allstate alleges that these people were in a position to take advice from Allstate's attorney, and therefore, Mueller's communications are privileged and not subject to disclosure (Dkt. #66 at p. 7). "Mueller conferred with Rosborough regarding the investigation, and she relayed to Mueller [what] she needed, and whom he would need to initially interview." (Dkt. #102 at p. 6). As the investigation was prompted by Plaintiff, Mueller interviewed Plaintiff first (Dkt. #102 at p. 6). During the interview, Allstate alleges that Mueller "told Plaintiff that because of in-house's direction, the investigation was attorney-client privileged." (Dkt. #102 at p. 6).

Plaintiff alleges that Allstate has not attempted to meet its burden to demonstrate how each document or communication satisfies the elements of privilege (Dkt. #100 at pp. 4-5). Specifically, Plaintiff asserts that Allstate has made general allegations of attorney-client privilege as to each document in its privilege log (Dkt. #100 at pp. 4-5). Allstate alleges that the withheld documents were accurately and sufficiently described in Allstate's privilege log, and contained (1) the date the document was created; (2) the type of document; (3) the title and/or

7

description of the document; (4) the author and recipient of the document; (5) the privilege asserted; (6) the titles and positions of the authors and recipients; and (7) whether the attachments to the document were privileged (Dkt. #102 at p. 5).  The Court agrees with Allstate that they have not made general allegations of privilege, and have made sufficiently stated their claims for privilege within their privilege log.[2]

Next, Plaintiff alleges that "Defendants at no time have actually identified the 'legal advice' Mueller's communications relate to."  (Dkt. #100 at p. 6).  Plaintiff argues that Mueller was "not providing legal advice to Allstate or Butler, but [was] acting as an investigator."  (Dkt. #100 at p. 7).  According to Allstate, "[a]t all times relevant, Mueller served in a legal capacity as he gathered the necessary information and documents so that the proper legal advice could be provided to Allstate."  (Dkt. #102 at p. 6).

Texas Rule of Civil Evidence 503(b) precludes the discovery of communications between attorney and client.  TEX. R. EVID. 503(b).  "A client has the privilege to refuse to disclose and prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of legal services to the client."  *IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding) (citing TEX. R. CIV. EVID. 503(b)).  The privilege applies to communications between:

> (1) the client's representative and the attorney or the attorney's representative; (2) the attorney and the attorney's representative; (3) the client, his representative, his attorney and an attorney representing another party in the pending action and concerning a matter of common interest; (4) representatives of the client, and the

---

[2] In the Fifth Circuit, "[a] party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *see* FED. R. CIV. P. 26(b)(5).  Federal Rule of Civil Procedure 26(b)(5) provides that "a party claiming a privilege 'shall make the claim expressly and shall describe the nature of documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'"  *Id.* (citing FED. R. CIV. P. 26(b)(5)).  In complex litigation, compliance is generally accomplished with a privilege log that identifies the documents by date, names of the author or authors and recipient or recipients, and generally describes the subject matter. *Id.*

client and his representatives; (5) attorneys and their representatives representing the same client.

TEX. R. EVID. 503(b). "A representative of the lawyer is a person employed by the lawyer to assist the lawyer in the rendition of professional legal services." *IMC Fertilizer, Inc.*, 846 S.W.2d at 592 (citing TEX. R. EVID. 503(a)(4)).

> Although the attorney-client privilege extends to communications between 'representatives of the client,' a party invoking the privilege must show that each person privy to the communication: (1) had the authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client.

*Navigant*, 220 F.R.D. at 475 (quoting *Seibu*, 2002 WL 87461, at *2) (citing TEX. R. EVID. 503(a)(2)(A)-(B)).

"The attorney-client privilege protects confidential communications between a lawyer and a client or their respective representatives made to facilitate the rendition of professional legal services to the client." *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 340 (Tex. App.—Texarkana 1999, orig. proceeding [mand. denied]) (citing TEX. R. EVID. 503(b)). Although the privilege is not limited to communications made in anticipation of litigation, it does not apply if the attorney is acting in a capacity other than that of an attorney. *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d at 340; *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332 (Tex. App—Austin 2000, pet. denied); *see Clayton v. Canida*, 223 S.W.2d 264, 266 (Tex. App.—Texarkana 1949, no writ) (attorney acting as an accountant); *Pondrum v. Gray*, 298 S.W. 409, 412 (Tex. Comm'n App. 1927, holding approved)(communications to attorney acting as scrivener not privileged). But in appropriate circumstances, "the privilege may bar disclosures made by a client to non-lawyers who…had been employed as agents of an attorney." *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) (citing *United States v. Kovel*, 296 F.2d 918, 921 (2d

Cir. 1961); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 40 (D.Md. 1974); *United States v. Schmidt*, 360 F. Supp. 339, 346 (M.D.Pa. 1973)).

"The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. However, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney…" *Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 509 (W.D. Miss. 1988) (quoting *Upjohn*, 449 U.S. at 395). In *Upjohn*, the Supreme Court found that attorney-client privilege applied for investigative inquiries because,

> …the privilege exists to protect not only the giving of professional advice…but also the giving of information to the lawyer to enable him to give sound and informed advice…The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.

*In re LTV Sec. Litig.*, 89 F.R.D. 595, 601 (N.D. Tex. 1981) (citations omitted). However, "the privilege does not protect documents and other communications simply because they result from an attorney-client relationship." *Navigant*, 220 F.R.D. at 473; *see Seibu*, 2002 WL 87461, at *2. Additionally, "documents are not privileged merely because they [are] prepared by and sent to an attorney." *Navigant*, 220 F.R.D. at 475; *see Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 479 (E.D. Tex. 2000).

The Court finds that Mueller was acting as an agent for Allstate's in house counsel when he conducted the investigation into Watkins. At all times relevant to the investigation, Mueller reported to Rosborough or someone else within the legal department of Allstate, and conducted his investigation in order to provide legal advice to Allstate's in-house counsel. The Court finds that the undisclosed emails were communications made to Mueller to aid in the providing the

needed legal advice.  Additionally, the emails were made either to a lawyer within Allstate's in-house department or to Allstate representatives who were acting within the scope of their employment when they sent and received communications from Mueller.  *See Navigant*, 220 F.R.D. at 475 (quoting *Seibu*, 2002 WL 87461, at *2) (citing Tex. R. Evid. 503(a)(2)(A)-(B)).  Therefore, the documents are covered by attorney-client privilege, and may remain protected.

Therefore, the Court finds that the following documents are privileged under attorney-client privilege and do not need to be disclosed to Plaintiff in the pending action:

1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31.

Finally, Plaintiff asserts that Mueller failed to give Butler an *Upjohn* warning in connection with the interview, and therefore, attorney-client privilege does not attach to any evidence from Mueller's investigation (Dkt. #100 at p. 8).  Allstate asserts that Mueller "very clearly" explained the reason for the interview, but Mueller did not tell Plaintiff that his report was attorney-client privileged, nor did Mueller tell Plaintiff that he was Plaintiff's counsel or representative (Dkt. #102 at pp. 7-8).  The Court believes that Plaintiff is asserting that he is also privy to attorney-client privilege under the joint client doctrine because Mueller did not provide him with an appropriate *Upjohn* warning.

Texas Rule of Evidence 503(d)(5) sets forth the joint client exception to the attorney-client privilege.  *In re Valero Energy Corp.*, 973 S.W.2d 453, 458 (Tex. Ct. App.—Houston [14th Dist.] 1998, orig. proceeding).  The rule states that "the privilege does not apply if the communication (1) is offered in an action between clients who retained or consulted the same lawyer; (2) was made by any of the clients to the lawyer; and (3) is relevant to a matter of common interest between the clients.  Tex. R. Evid. 503(d)(5).

In the present case, Plaintiff has failed to show that he and Allstate were joint clients. The only evidence Plaintiff offers is the fact the Mueller did not give him an *Upjohn* warning in connection with Plaintiff's interview. However, the Court agrees with Allstate that Mueller gave Plaintiff adequate warning that he was not representing Plaintiff. First, Mueller stated that he was conducting an investigation on behalf of Allstate (Dkt. #102 at p. 7; *see* Dkt. #102, Exhibit B). Furthermore, Mueller told Plaintiff, "Ok and just a reminder that the investigation I'm doing is being done at the direction of a lawyer here at Allstate and so it is subject to the attorney/client privilege." (Dkt. #102, Exhibit B). It also appears that during the interview Plaintiff was not confused that he was represented by Mueller or by Allstate's in-house counsel (Dkt. #102, Exhibit B) (stating "Is it okay that I share with you what I'm supposed to be doing even though I'm not supposed to be doing that per my own legal folks?"). It does not appear that Plaintiff sought legal counsel from Mueller during the interview; in fact, Plaintiff appears to understand throughout the interview that he is testifying regarding the complaint he made against Watkins. The Court finds that Plaintiff was not confused as to Mueller's role in the investigation, and therefore, attorney-client privilege did not attach to Plaintiff from the interview.

*Work Product Doctrine*

Allstate alleges that it withheld six documents[3] under the work-product doctrine that were "documents created by Allstate in-house counsel or Allstate representatives for the purpose of assisting with the rendition of legal advice." (Dkt. 102 at p. 4).

---

[3] First, the Court finds that Defendants include seven documents within their privilege log, in which they claim are entitled to protection under the work product doctrine: Documents 3, 5, 25, 29, 32, 33, and 34. Additionally, Defendants assert that document three and twenty-nine are privileged under both attorney-client privilege and the work product doctrine. Because the Court has found that it is privileged under attorney-client privilege, the Court will not analyze whether is it afforded protection under the work product doctrine. *See Elec. Data Sys. Corp.*, 2003 WL 21653414, at *1. Additionally, in their privilege log, Defendants state that document twenty-five is protected under the work product doctrine. However, the Court did not find document twenty-five within the documents included for *in camera* inspection, and therefore, will not rule at this time on whether document twenty-five should be disclosed.

"Rule 26(b)(3) recognizes a distinction between 'ordinary' and 'opinion' work product." *Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) (quoting *Thomas v. Gen. Motors Corp.*, 174 F.R.D. 386, 388 (E.D. Tex. 1997) (citing *Sporck v. Peil*, 759 F.2d 312 (3rd Cir. 1985)). Ordinary work product will be ordered produced "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED. R. CIV. P. 26(b)(3); *Thomas*, 174 F.R.D. at 388. Opinion work product, which conveys the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," has been accorded "almost absolute protection from discovery by some courts." *Conoco Inc.*, 191 F.R.D. at 118; *see Thomas*, 174 F.R.D. at 388; *Sporck*, 759 F.2d at 316; *In Re Int'l Sys.*, 693 F.2d at 1240. However, "opinion work product becomes subject to disclosure when (1) 'mental impressions are at issue in a case and the need for the material is compelling[;]' and (2) pursuant to the crime-fraud exception to discovery." *Conoco Inc.*, 191 F.R.D. at 118.

The Court finds that the information included within Defendants' privilege log constitutes opinion work product. Document five consists of a memo created by in-house counsel, Gary Stere, regarding an interview he conducted concerning the Watkins allegations. Documents thirty-two through thirty-four consist of handwritten notes that Mueller created when conducting his investigation. The Court finds that these documents would contain the "mental impressions, conclusions, opinions, or legal theories" as created by a lawyer or a representative for Allstate. *See Thomas*, 174 F.R.D. at 388. Additionally, Plaintiff has not asserted that Mueller's mental impressions are at issue in the present case or that the documents should be

produced under the crime-fraud exception.  Therefore, the Court finds that they are protected under the work product doctrine, and do not have to be disclosed to Plaintiff.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel (Dkt. #62) is hereby **DENIED**.

SIGNED this 29th day of January, 2016.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE